## Commonwealth v. The Chesapeake & Ohio Railway Company.

(Decided January 27, 1914.)

## Appeal from Mason Circuit Court.

Railroads—Depots—Application of Section 772 of the Statute.—Section 772 of the statute, providing that every company operating a railroad shall provide a convenient and suitable waiting-room and water closet at all depots in cities and towns and other places required by the Railroad Commission, and maintain the same in decent order and repair, only applies to such depots as the railroad company has regularly established for the convenience of the public, and has no application to places between regular depots at which trains stop to receive and take on passengers or to offices in cities or towns at which tickets are sold.

M. J. HENNESSEY, M. M. LOGAN and C. H. MORRIS for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee railroad company was indicted by the grand jury of Mason County for its alleged failure to comply with that part of section 772 of the Kentucky Statutes, reading as follows:

"Every company operating a railroad in this State shall provide a convenient and suitable waiting-room and water-closet or privies at all depots in cities and towns, and at such other stations as the Railroad Commission may require on its lines, and keep and maintain the same in decent order and repair."

The indictment charged that the railroad company "did unlawfully and willfully fail and refuse to provide a suitable and convenient waiting-room at the passenger depot or station, located and being on Market street, in the city of Maysville, an incorporated city of the fourth class, in the county aforesaid, said depot and waiting-room being used by said company for passengers using and traveling on and by numerous accommodation passenger trains making regular and schedule stops at said Market street, and said depot or station, and same being used as a waiting-room and station by numerous passengers and people traveling on and using said railroad, and that said station or waiting room used as such by

said company as such is located some distance, at least half of a square or block, and more than two hundred feet away from the place said trains of said company stop, and that on account thereof, men, women and children are compelled to leave said waiting room at the time said trains are due to arrive, and when said trains are late, remain and stand in the cold and rain and weather for unreasonable length of time and frequently more than thirty minutes waiting the arrival of said train; and further that said waiting room is not properly, or comfortably heated and ventilated."

The court, after hearing the case on the following agreed statement of facts, adjudged that the railroad company was not guilty, and the Commonwealth prosecutes this appeal.

"It is agreed by and between the Commonwealth of Kentucky and the defendant that the following facts are true:

"First: That during the time mentioned in the indictment, the defendant maintained a depot or waiting room on Market street, in the city of Maysville, in which it kept a ticket office, where certain tickets were sold, and a ticket agent; that said office was located in the Central Hotel building and was at a distance of 275 feet from the stopping place of the trains for which said office was maintained.

"Second: That defendant maintained its regular depot near the western end of the city of Maysville; that said depot was the regular stop for all passenger trains on defendant's line of railway running through Maysville, and was ample in its accommodation for the traveling public, same being located at a distance of from three-fourths to one mile from the Market street depot described in the foregoing paragraph.

"Third: That at the Market street stop for which the Market street depot is maintained, only local accommodation trains, six in number, stop thereat; that at the regular depot described in paragraph two, all passenger trains, to-wit: twelve each day stop.

"Fourth: That because of the location of the Market street waiting room at a distance of 275 feet from the place where the trains stop, it is necessary to have persons using said waiting-room who wish to board trains at said stopping place to leave said waiting room and go to the place where said trains stop before the arrival

of the trains at said stop; that members of the traveling public were frequently required to stand exposed to inclement weather during all the times mentioned in the indictment, especially so when trains stopping at the Market street stop were late, because of the fact that it is impossible to see approaching trains until they have practically arrived at the stopping place.

"Fifth: That said waiting-room at Market street was established and maintained by the defendant of its own volition and not under any municipal or statutory requirement, and solely for the accommodation of the traveling public.

"Sixth: That on an average of from sixty to seventy, five persons use said Market street stop each day for the purpose of taking passage on defendant's trains stopping thereat; that about four times that number use defendant's regular depot.

"Seventh: That during the time mentioned in the indictment the defendant operated a line of railway through Mason county and the city of Maysville, which latter city is a city of the fourth class."

It will be noticed that the charge in the indictment is that the station or waiting room is "more than two hundred feet away from the place said trains of said company stop, and that on account thereof, men, women and children are compelled to leave said waiting-room at the time said trains are due to arrive, and when said trains are late, remain and stand in the cold and rain and weather for an unreasonable length of time and frequently more than thirty minutes waiting the arrival of said train"; and further "that the Market street ticket office was not properly or comfortably heated or, ventilated."

The argument for the Commonwealth is that the railroad company violated the statute in failing to maintain, at the point on Market street where the trains stopped to receive and discharge passengers, a convenient and suitable waiting-room. To state it in another way, the position of the Commonwealth is that whenever a railroad company has established a place on its line of road in a city or town at which its trains stop to receive and discharge passengers, it must also maintain at this place a convenient and suitable waiting-room. Assuming that this duty is imposed by the statute, it is further argued that the maintenance of an otherwise convenient and suitable waiting-room at a point 200 feet from the place where the trains stop is not a com-

pliance with the statute, because it is not convenient to the place at which the trains stop.

In behalf of the railroad company, it is said that this statute only refers to places at which the railroad company has established depots on its line of road, and does not apply to other places at which, for the convenience of passengers, trains are stopped, and therefore the company did not, under the agreed state of facts, which show that it had a convenient and suitable waiting-room at its regular depot in the city of Maysville, commit any violation of the statute in failing to maintain at the stopping place on Market street a convenient and suitable waiting-room adjacent, as depots usually are, to the track.

There is no provision in the statute prescribing the places at which railroad companies shall maintain depots, although it is provided in section 772 that when a company has maintained a depot at a place for five years, it shall not abandon it without the written consent of the Railroad Commission, and that if it should be burned or otherwise destroyed or become unfit for accommodation, the Railroad Commission may require the company to repair or rebuild it. It is, however, a matter of common knowledge that the railroad companies of the State have established at convenient places regular depots for the use and accommodation of passengers, equipped as provided in sec. 772, and we think that the provisions of sec. 772 only apply to depots of this class.

It is also a matter of common knowledge that railroad companies, at points between many of these regularly established depots, stop some or perhaps all of their passenger trains at places that have been so located as to meet the convenience of people living in the immediate vicinity, but we do not understand that the statute prohibits railroad companies from discontinuing or changing these places. It is also quite probable that the stopping of trains at many of these intermediate places is of no benefit or advantage to the railroad company or to the public generally, although it may be quite a convenience to the persons who happen to live nearby, and it would be an unreasonable burden to put upon railroad companies the necessity of maintaining depots equipped in the manner provided in section 772 at every place its passenger trains may stop for the accommodation of passengers who live between the regularly appointed stopping places or whose business makes it more convenient for them to take and leave the train at these in-

termediate stops. It also seems likely that if the companies were required to erect lawfully equipped depots at every customary stopping place between regular stations, it would result in the abandonment of these stops, and thus the enforcement of a rule like this would be a disadvantage in place of a benefit to the persons who use these stopping places to take and leave trains.

It is also apparently insisted by the Commonwealth that when a railroad company has established in a city or town at a point distant from its railroad tracks a ticket office and waiting-room where persons who desire to buy tickets to take passage at the regularly established depots or at the intermediate stopping places, may do so, it is under a duty to maintain and equip these ticket offices in the manner required in section 772. But for the reasons already stated, we do not think so. A railroad company may or may not, at its pleasure, establish ticket offices at places other than its regular depots, and if it chooses to sell tickets at other places than its regular depots, the statute applicable to regular depots has no application to these ticket offices which may be abandoned or changed at any time by the company.

The judgment is affirmed.